SHAHANE A. MARTIROSYAN (SBN 295471)
STEPHAN FILIP P.C.
100 W. Broadway Suite 1040
Glendale, CA 91210
Tel:(323) 303.3533
Fax:(323) 303.3534
Service@stephanfilip.com

Attorneys for Plaintiff WILLIAM JOHNSON

# UNITED STATES DISTRICT COURT

# CALIFORNIA NORTHERN DISTRICT

| | |
|---|---|
| WILLIAM JOHNSON, an Individual, | Case No. |
| Plaintiff, | |
| vs. | ASSIGNED FOR ALL PURPOSES TO HONORABLE ___; DEPT. ____ |
| KOS MEDIA LLC, a California Limited Liability Company; MARKOS MOULITSAS, a California individual; and DOES 1 — 100, inclusive; | **COMPLAINT FOR DAMAGES** |
| Defendants. | 1. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| | 2. **BREACH OF CONTRACT;** |

1

|  |  |
|---|---|
|  | ) 3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIL DEALING;** |
|  | ) 4. **VIOLATION OF WAGE PAYMENT AND COLLECTION LAW SECTION 32-1302;** |
|  | ) 5. **VIOLATION OF WAGE PAYMENT AND COLLECTION LAW SECTION 32-1303; and** |
|  | ) 6. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.** |
|  | ) **JURY TRIAL DEMANDED** |

COMES NOW, Plaintiff WILLIAM JOHNSON ("JOHNSON" or "Plaintiff") and states and alleges their complaint against Defendants KOS MEDIA LLC, a California Limited Liability Company; MARKOS MOULITSAS, a California

individual; and DOES 1 through 100, (hereinafter, collectively, "KOS" or "Defendants"), as follows:

1. This is a Complaint for Wrongful Termination In Violation Of Public Policy; Breach Of Contract; Breach Of Implied Covenant Of Good Faith And Fail Dealing; Violation Of Wage Payment And Collection Law Section 32-1302; Violation Of Wage Payment And Collection Law Section 32-1303; And Intentional Infliction Of Emotional Distress.

## JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1332 as this district court has original jurisdiction of this case as the matter involves controversy that exceeds the sum of $75,000 and is between citizens of different States.

## VENUE

3. Venue in this Court is invoked pursuant to 28 U.S.C. section 1391 as all named Defendants are residents of the State in which the district is located and where the termination decision was made.

## PARTIES

4. At all times material herein, Plaintiff WILLIAM JOHNSON was a resident of the District of Columbia and worked in District of Columbia for Defendants.

5. At all times material herein, Defendant KOS MEDIA LLC, was a California Limited Liability Company doing business in California and in the County of Alameda. Defendant was Plaintiff's employer at all relevant times mentioned in this Complaint.

6. At all times material herein, Defendant MARKOS MOULITSAS, was a California individual and was doing business in California and in the County of Alameda. MOULITSAS was Plaintiff's employer at all relevant times mentioned in this Complaint. MOULITSAS is the only member or manager for the company. MOULITSAS owns over 70 percent of the company. MOULITSAS exercises such complete dominion and control "in respect to the transaction attacked" that the Limited Liability Company had "at the time" of the wrongs alleged herein no separate will of its own, and (2) that this domination was used to "commit fraud or wrong" against Plaintiff as alleged herein, which proximately caused Plaintiff's injury alleged herein. MOULITSAS is the alter ego for KOS MEDIA LLC as (1) KOS MEDIA LLC lacks the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) there is overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of MOULITSAS and KOS MEDIA LLC, (6) MOULITSAS makes all relevant business decisions and KOS MEDIA LLC has no separate business

4
COMPLAINT FOR DAMAGES

discretion, (7) there is no arms length separation between KOS MEDIA LLC and MOULITSAS, (8) MOULITSAS makes the payment or guarantee of debts of KOS MEDIA LLC, and (9) MOULITSAS used all and any kind of property that belongs to KOS MEDIA LLC as if it were his own. KOS is MOULITSAS nickname.

## DOE DEFENDANTS

7. The full extent of the facts linking the fictitiously designated Defendants with the causes of action alleged herein are unknown to Plaintiff at this time. In addition, the true names, and capacities, whether individual, plural, corporate, partnership, associate, or otherwise are also unknown to Plaintiff at this time. Plaintiff, therefore, designates such Defendants as DOES 1 to 100 inclusive, and sues them under those fictitious names.

8. To the extent such DOE Defendants are corporate entities, Plaintiff sues them in that capacity and such corporate entities are responsible for all acts of their employees, agents, representatives, and principals as all alleged actions were done within the course and scope of their employment.

9. To extent such DOE Defendants are individuals, Plaintiff sues them in that capacity and alleges that they took the actions as agents of a corporate entity or for the benefit of themselves.

10. Plaintiff alleges that each and every Defendant designated as DOE was responsible for the events referred to therein and, in some manner, caused injuries to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to state the

manner in which each fictitious Defendant is so responsible and will ask leave of Court to amend this Complaint to show their respective true names and capacities when ascertained.

## STATEMENT OF FACTS

11. Defendant KOS MEDIA LLS ("KOS MEDIA") proclaims to be "a progressive news site that fights for democracy by giving [its] audience information and resources to win elections and impact government." Kos Media was founded in 2002 by Defendant Markos Moulitsas. Defendants' website is available internationally, including in Europe. Defendants are required to comply with GDPR ("General Data Protection Regulation"). GDPR is a European regulation on information privacy in the European Union and the European Economic Area. Similarly, Defendants are required to comply with California Consumer Privacy Act. The intention of California Consumer Privacy Act is to provide California residents with the right to 1) know what personal data is being collected from them, 2) know whether their personal data is sold or disclosed and to whom, 3) say no to sale of personal data, 4) access their personal data, 5) request a business to delete any personal information about a consumer collected from that consumer, 6) not be discriminated against for exercising their privacy rights. Compliance with GDPR and the California Consumer Privacy Act are similar.

12. Plaintiff began working for Defendants in October 2017 as the Sr. VP of Advertising Strategy. Plaintiff's compensation base salary was $200,000 per year and

commission after every advertising dollar sold. Plaintiff earned $320,000 in total compensation. Each year, Plaintiff's base salary increased, leading it to $240,000.00. In 2019, Plaintiff's total compensation was $320,000 with $200,000 being in base. In 2020, Plaintiff had a base salary of $240,000, and total compensation of $430,000.00. In 2021, Plaintiff earned $240,000 base with total compensation of $725,000.00. In 2022, Plaintiff earned total compensation of $500,000 with $240,000 being base. In 2022, Defendants gave Plaintiff a promotion and Plaintiff became the Sr. VP of Sales and Client Services. Plaintiff's agreements with Defendants were memorialized in writing in two separate contracts. Plaintiff's base salary increased to $440,000.00. In 2023, Plaintiff earned total compensation of $440,000.00. In 2024, Plaintiff also earned approximately $350,000.00 through September 9.

13.  Plaintiff worked from Defendants' co-working offices in Washington D.C.

14.  Defendants praised Plaintiff's performance. Defendants never had any performance issues. Defendants described Plaintiff as an employee who consistently met or exceeded expectations. At the time of his promotion, Plaintiff was asked to lead a newly combined sales and client services department. In the 2020 and 2024 election cycles, Biden/Harris for President campaigns praised Plaintiff and his department as ranking among their highest performing and most responsive ad partners. ACLU, Doctors without Borders, and the International Fund for Animal Welfare offered similar praises to Plaintiff and his team.

15. In October, November, and December 2022, Plaintiff earned commission for $64,580.92. However, to date, Defendants have not paid Plaintiff the earned commission of $64,580.92.

16. In early 2024, Dacia Mitchell became the president of Daily Kos.

17. In July 2024, just two months before his unlawful termination, Plaintiff was elevated to the executive leadership team within the company, the highest decision-making body in the organization. At the time that his promotion was announced, and in his first meeting with the executive team, Dacia Mitchell – the President - described the promotion as "something that had been in the works for a while and was long overdue." She also said that the company had critical revenue goals that needed to be met and that Plaintiff was elevated to the executive committee because he would be a critical part of meeting those goals and that they "could not do it [meet said goals] without [Plaintiff]."

18. There was an issue within the organization as Mitchell and Defendant Moulitsas did not want to comply with the privacy laws and regulations on privacy. A vendor created Daily Kos's website. On Friday, September 6, 2024, Mitchell asked Plaintiff to call the vendor and tell the vendor that Daily Kos did not want to comply with the privacy laws required by law. Plaintiff opposed Mitchell's request. Plaintiff told Mitchell that the request was against the law. Mitchell responded:

> Dacia Mitchell
> 11:49 AM
> Mine too, and Markos is aware of the risk (e.g., fines of up 2% annual revenue)

> Dacia Mitchell
> 12:10 PM
> At this point, he's not arguing about risk, but the *existence* of GDPR. And of my list of to-do's today and forever, …. *checks notes* … arguing with Markos about the practicality, fairness, and ethics of international data policy is not on the agenda

19. Immediately, and in response to Plaintiff's objection to violating the law, on September 9, 2024, Defendants terminated Plaintiff's employment. Defendants offered Plaintiff six weeks of severance in exchange for him to release all his claims against Defendants including his claim for the $64,580.92 unpaid commission. Even more, the severance agreement violated Plaintiff's initial agreement with Defendants which provided for a minimum amount for severance as follows: if the company rejected a commercially reasonable line of business that Plaintiff proposed, at the termination of Plaintiff's employment Plaintiff would be granted separation pay as follows: six weeks' pay after more than one year but less than two years of employment, nine weeks' pay for more than two years but less than three years of employment, and 12 week pay after three or more years of employment. There are several instances in which Defendants refused to agree to new sources of revenue such as a partnership with Admiral and Neustar. Therefore, Plaintiff's severance should have been for at least 12 weeks of pay and $64,580.92.

20. As of the filing of this Complaint, Defendants continue not to comply with these laws.

21. As of the filing of this Complaint, Defendants continue to withhold $64,580.92 in unpaid commission. As such, Plaintiff is entitled to treble in damages.

22. As a result of Defendants' conduct, Plaintiff has suffered, and continues to suffer humiliation, embarrassment, emotional distress, and mental anguish. Plaintiff is a victim of Defendants' unlawful practices and therefore brings this action to recover damages, restitution, attorneys' fees and costs, and injunctive and declaratory relief.

## FIRST CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

**(Plaintiff Against All Defendants, and Does 1 to 100)**

23. Plaintiff hereby repeats and realleges each and every allegation contained throughout this Complaint, and incorporates same by reference with the same force and effect as though set forth in full at this point.

24. Plaintiff was discharged from his employment for reasons that violate the public policy of the State of Maryland, the State of California, Washington, D.C., and the United States. Defendants' retaliation against Plaintiff in terms and conditions of employment and ultimate termination of his employment which was in violation of such public policies, including those set forth in statutes and regulations prohibiting violating privacy rights, GDRP, CCPA, and their regulations and case interpretations.

25. As alleged herein as set forth in more detail above, during Plaintiff's employment, Defendants retaliated against him because of his complaints of public policy violations and denied him the opportunity to continue gainful employment. Such conduct is prohibited in California, in Maryland, and Washington, D.C., as

expressed in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Adams v. George W. Cochran & Co.,* 597 A2d 28, 34 (D.C. 1991).

26. As a direct and proximate result of Defendants' conducts as set forth above, Plaintiff's emotional wellbeing have suffered and will continue to suffer, Plaintiff has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Plaintiff alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial.

27. Defendants' despicable conduct as described herein was malicious and oppressive and done with conscious disregard of Plaintiff's rights and public health and well-being. Defendants' acts were designed to humiliate and oppress Plaintiff, and they had that effect. Defendants condoned, ratified, and encouraged unlawful conduct. Thus, Plaintiff is entitled to punitive damages against Defendants under Due Process Clause of the Fourteenth Amendment.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Plaintiff Against All Defendants, and Does 1 to 100)**

28. Plaintiff hereby repeats and re-alleges each and every allegation contained in all of the other paragraphs of this complaint, and incorporates same by reference with the same force and effect as though fully set forth in full at this point.

29. Plaintiff alleges that he and Defendants entered into a contract for payment of earnings and commission. Commission paid per quarter.

30. Plaintiff alleges that Defendant breached this contract by failing to pay commission for Q4 2022. For Q4 2022, Plaintiff made $430,539.49 in sales. Per their agreement, Defendants should have paid Plaintiff $64,580.92. Defendants failed to pay Plaintiff $64,580.92.

31. Defendants' breach of this contract caused harm to Plaintiff for which Defendants should pay.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF

## GOOD FAITH AND FAIL DEALING

**(Plaintiff Against All Defendants, and Does 1 to 100)**

32. Plaintiff hereby repeats and re-alleges each and every allegation contained in all of the other paragraphs of this complaint, and incorporates same by reference with the same force and effect as though fully set forth in full at this point.

33. In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not to anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. Defendants violated the duty to act fairly and in good faith.

Plaintiff and Defendants entered into a contract for payment of earnings and commission. Commission paid per quarter.

34. Plaintiff alleges that Defendant breached this contract by failing to pay commission for Q4 2022. Plaintiff did all, or substantially all of the significant things that the contract required him to do. For Q4 2022, Plaintiff made $430,539.49 in sales. Per their agreement, Defendants should have paid Plaintiff $64,580.92. Defendants failed to pay Plaintiff $64,580.92. By failing to pay, Defendants did not act fairly and in good faith.

35. Defendants' conduct caused harm to Plaintiff for which Defendants should pay.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF WAGE PAYMENT AND COLLECTION LAW**

**SECTION 32-1302**

**(Plaintiff Against All Defendants, and Does 1 to 100)**

36. Plaintiff hereby repeats and re-alleges each and every allegation contained throughout this Complaint, and incorporate same by reference with the same force and effect as though set forth in full at this point.

37. This action is brought under D.C. Wage Payment And Collection Law section 32-1302 which, at all times relevant herein, provided:

> An employer shall pay all wages earned to his or her employees on
> regular paydays designated in advance by the employer and at least twice

during each calendar month; except, that all bona fide administrative, executive, and professional employees (those employees employed in a bona fide administrative, executive, or professional capacity, as defined in section 7-999.1 of the District of Columbia Municipal Regulation (7 DCMR § 999.1)) shall be paid at least once per month; provided, however, that an interval of not more than 10 working days may elapse between the end of the pay period covered and the regular payday designated by the employer, except where a different period is specified in a collective agreement between an employer and a bona fide labor organization; provided further, that where, by contract or custom, an employer has paid wages at least once each calendar month, he may lawfully continue to do so. Wages shall be paid on designated paydays in lawful money of the United States, or checks on banks payable upon demand by the bank upon which drawn.

38. Plaintiff does not work for Defendants, however Defendants failed to provide him with all monies owed at the beginning of 2023.

39. The Parties could not waive this Wage Payment And Collection Law section.

40. As a result, Plaintiff has suffered and continues to suffer damages, to be proven at trial.

///

## FIFTH CAUSE OF ACTION

## VIOLATION OF WAGE PAYMENT AND COLLECTION LAW

## SECTION 32-1303

### (Plaintiff Against All Defendants, and Does 1 to 100)

41. Plaintiff hereby repeats and re-alleges each and every allegation contained throughout this Complaint, and incorporate same by reference with the same force and effect as though set forth in full at this point.

42. This action is brought under D.C. Wage Payment And Collection Law section 32-1303 which, at all times relevant herein, provided:

**(1)** Whenever an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge; provided, however, that in the instance of an employee who is responsible for monies belonging to the employer, the employer shall be allowed a period of 4 days from the date of discharge or resignation for the determination of the accuracy of the employee's accounts, at the end of which time all wages earned by the employee shall be paid.
**(2)** Whenever an employee (not having a written contract of employment for a period in excess of 30 days) quits or resigns, the employer shall pay the employee's wages due upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier.
…
**(4)** If an employer fails to pay an employee wages earned as required under paragraphs (1), (2), and (3) of this section, such employer shall pay, or be additionally liable to, the employee, as liquidated damages, 10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller.

43. Plaintiff does not work for Defendants, however Defendants failed to provide him with all monies owed at the beginning of 2023.

44. The Parties could not waive this Wage Payment And Collection Law section.

45. As a result, Plaintiff has suffered and continues to suffer damages, to be proven at trial.

46. As a result of Defendants' conduct in not paying Plaintiff's final paycheck on the date of his termination with all monies owed which Plaintiff was entitled, Plaintiff is entitled to 10 percent liquidated damages on said monies owed, and attorney's fees and costs.

### SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Plaintiff Against All Defendants and Does 1 to 100)**

47. Plaintiff hereby repeats and re-alleges each and every allegation contained in all of the other paragraphs of this complaint, and incorporates same by reference with the same force and effect as though fully set forth in full at this point.

48. As described herein, Defendants' conduct toward Plaintiff was outrageous in that said conduct was beyond all bounds of decency. Defendants responded by retaliating against Plaintiff in terms and conditions of employment, by numerous unlawful, retaliatory actions.

49. Defendants' despicable and outrageous conduct as described herein was malicious and oppressive and done with a conscious disregard of Plaintiff's rights. All said conduct was intentional and done to oppress and humiliate Plaintiff.

Defendants' said conduct would cause Plaintiff to suffer severe emotional distress. Said conduct, in fact, caused Plaintiff to suffer severe emotional distress the precise amounts to be proven at trial.

50. Plaintiff did not consent to any of the outrageous conduct. None of the conduct was privileged. Defendants committed said acts by asserting their power over Plaintiff with regard to his employment, compensation, or other benefits.

51. As a direct and proximate result of the Defendants' conduct as set forth above, Plaintiff's emotional wellbeing has suffered and will continue to suffer; Plaintiff has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Plaintiff alleges that He has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial.

52. Defendants' acts were fraudulent and designed to humiliate and oppress Plaintiff and to cause his injury and this conduct had this effect. Thus, Plaintiff is entitled to punitive damages against Defendants under Due Process Clause of the Fourteenth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendants, and each of them, jointly and severally as follows:

1. That Defendants be ordered to pay Plaintiff compensatory and general damages according to proof at trial;

2. That Defendants be ordered to pay Plaintiff's lost earnings for at least two years, commission of at least $64,580.92, and other employee benefits, past and future;

3. That Defendants be ordered to pay liquidated damages equal to treble the amount of unpaid wages;

4. That Defendants be ordered to pay statutory penalties pursuant to the violations the Wage Payment And Collection Law;

5. That Defendants be ordered to pay Plaintiff punitive damages award;

6. That Defendants be ordered to pay prejudgment interest;

7. That Defendants be ordered to pay Plaintiff's costs of suit;

8. That Defendants be ordered to pay Plaintiff's reasonable attorneys' fees pursuant to applicable law;

9. That this Court order Defendants to pay penalties, interest, and any other remedies to Plaintiff;

10. That this Court awards such other and further relief as the Court deems just and proper.

Respectfully submitted by:

DATED: January 7, 2025                      **STEPHAN FILIP P.C.**

                                            By: _____
                                            Shahane A. Martirosyan
                                            Attorneys for Plaintiff
                                            William Johnson

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Respectfully submitted by:

DATED: January 7, 2025   **STEPHAN FILIP P.C.**

By: _/s/ Shahane_
Shahane A. Martirosyan
Attorneys for Plaintiff
William Johnson